J-S22030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :            PENNSYLVANIA
                               :
              v.               :
                               :
                               :
                               :
JENNIFER ANN MEDZIE            :
                               :
           Appellant           :   No. 1220 WDA 2022

Appeal from the PCRA Order Entered September 23, 2022
In the Court of Common Pleas of Clearfield County
Criminal Division at No:  CP-17-CR-0000771-2016

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED:  October 13, 2023**

Appellant, Jennifer Ann Medzie, appeals from the September 23, 2022

order denying her petition pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. §§ 9541-46.  We affirm.

The PCRA court summarized the pertinent facts:

> On August 25, 2016, a criminal complaint was filed against
> [Appellant], which charged her with homicide, aggravated assault,
> endangering the welfare of children, simple assault, and recklessly
> endangering another person.  The charges stem from an incident
> on November 15, 2013.  At that time, [Appellant] resided with her
> boyfriend, Cody Lauder, and his 2-year-old daughter, S.H.
> (hereinafter "the Victim").  On November 15, 2013, [Appellant]
> was taking care of the Victim while Cody Lauder was at work, like
> she had done since moving in with them.  About 7:30 that
> morning, the Victim woke up in her pack and play, and [Appellant]
> took her out to get the Victim dressed for the day.  While
> [Appellant] was dressing the Victim, she went limp in [Appellant's]
> arms.  [Appellant] then called the Victim's step-grandmother for
> help.  Brandi Lauder, the step-grandmother, told [Appellant] that
> the victim had been sick the night before and she was probably
> just tired from being ill.  Shortly after, [Appellant] called her

friend, Krisandra Evans, to come over because something was wrong with the Victim. Evans arrived at [Appellant's] house at approximately 8:00 a.m., and Evans called Brandi Lauder to tell her the Victim was not breathing normally. Then, Evans called 911 at 8:44 a.m.

EMS arrived and transported the Victim to Clearfield Hospital, but the Victim was ultimately flown to Pittsburgh Children's Hospital for treatment. On November 16, 2013, Dr. Adelaide Eichman examined the Victim and found her injuries were caused by non-accidental shaking. Despite being treated, the Victim was pronounced dead on November 18, 2013. An autopsy was performed on November 20, 2013 by Dr. Kenneth Clark; Dr. Clark found that the injuries suffered by the Victim appeared to be caused by blunt force trauma. The manner of death was listed as 'pending investigation.' Later, Dr. Harry Kamerow reviewed the medical and autopsy reports and found that the cause of death was global hypoxic ischemic encephalopathy, the manner of death was homicide. Additionally, Dr. Kamerow found that the Victim would have been symptomatic almost immediately after the injury had occurred.

PCRA Court Opinion and Order, 9/28/22, at 1-2.

On August 23, 2017, at the conclusion of a three-day trial, the jury found Appellant guilty of third-degree murder, aggravated assault, endangering the welfare of children, and related offenses.[1] The trial court imposed an aggregate twenty to forty years of incarceration. This Court affirmed the judgment of sentence on October 9, 2019. On November 9, 2020, Appellant filed this timely, counseled, first PCRA petition alleging the ineffective assistance of trial counsel. The PCRA court conducted a hearing on April 18, 2022 and entered its order denying relief on September 28, 2022. This timely appeal followed.

---

[1] 18 Pa.C.S.A. §§ 2502(c), 2702, and 4304.

On appeal from an order dismissing a PCRA petition, we must determine whether the record supports the PCRA court's findings of fact, and whether the PCRA court committed an error of law. ***Commonwealth v. Diaz***, 183 A.3d 417, 421 (Pa. Super. 2018), ***aff'd***, 226 A.3d 995 (Pa. 2020). The PCRA court's findings of fact, if supported by the record, are binding on this Court. ***Id.*** We review the PCRA court's legal conclusions *de novo*. ***Id.***

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must plead and prove that (1) the underlying issue is of arguable merit; (2) counsel had no reasonable strategic basis in support of the disputed action or inaction; and (3) the petitioner suffered prejudice, such that there is a reasonable probability that, but for counsel's error, the outcome of the underlying proceeding would have been different. ***Commonwealth v. Stultz***, 114 A.3d 865, 880-81 (Pa. Super. 2015), ***appeal denied***, 125 A.3d 1201 (Pa. 2015). The failure to meet any of these prongs is fatal to the claim. ***Id.***

Appellant's written argument is divided in twelve sections addressing separate allegations of trial counsel's ineffectiveness.[2] Many of these sections

_____

[2] This strategy rarely succeeds:

> Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one ...

*(Footnote Continued Next Page)*

are underdeveloped and repetitive of one another. We will address each in turn.

First, Appellant claims trial counsel was ineffective for failing to pursue an alternate perpetrator claim. Appellant's Brief at 11-13. In particular, she argues that trial counsel should have introduced evidence that the Victim's father, Cody Lauder ("Cody"), had a history of violent and controlling behavior. In a statement to police, the Victim's biological mother said Cody had anger issues and would have been capable of causing the Victim's fatal injury. Appellant also notes that Cody was the last person other than Appellant to be with the victim before the fatal injury occurred. The record reflects that the Victim was hospitalized briefly on November 14, 2013, the night before the incident in question, while she was in the custody of her grandparents. The hospital records from that night note a yellow bruising on the Victim's forehead. N.T. PCRA Hearing, 4/18/22, at 15-16. Thus, Appellant claims that trial counsel should have used Cody's propensity for violence and the hospital records from the night before the incident to introduce an alternate perpetrator defense.

---

[E]xperience on the bench convinces me that **multiplying assignments of error will dilute and weaken a good case** and will not save a bad one.

***Commonwealth v. Robinson***, 864 A.2d 460, 480 (Pa. 2004) (**quoting**, Jackson, *Advocacy Before the United States Supreme Court*, 25 Temple L.Q. 115, 119 (1951) (emphasis added in ***Robinson***).

We believe this issue is of arguable merit. Appellant cannot, however, make out the remining two prongs of her ineffective assistance claim. As noted above, the Commonwealth's evidence was that the Victim died from sudden, nonaccidental shaking, and that the onset of symptoms would have started immediately when she sustained the injury. Appellant was the only person with the Victim when her symptoms began. Further, trial counsel testified at the PCRA hearing that he was aware of the Victim's hospitalization on the night before her death, and that he tried and failed to find an expert who would have testified that the Victim's death could have resulted from a preexisting illness or injury.[3] N.T, PCRA Hearing, 4/18/22, at 29-30. Counsel therefore concluded that an alternate perpetrator defense was not viable. Instead, his trial strategy was to establish that Appellant lacked the specific intent to kill and therefore avoid a conviction for first-degree murder. He succeeded. Given all of the foregoing circumstances, we conclude counsel's strategy was reasonable. Also, given the apparent lack of evidentiary support for an alternate perpetrator defense, Appellant cannot establish prejudice. Her first argument fails.

_____

[3] The PCRA court found counsel's testimony credible and relied on it in its opinion. PCRA Court Opinion, 9/28/22, at 5. At the PCRA hearing, PCRA counsel acknowledged that he was unable to procure an expert who would have refuted the Commonwealth's medical experts. PCRA counsel therefore withdrew the claim that trial counsel was ineffective for failing to consult with and procure a favorable expert witness. N.T, PCRA Hearing, 4/18/22, at 60-61.

Appellant's second argument is that trial counsel was ineffective for failing to impeach Cody with pretrial statements he made to police. Appellant's Brief at 13-15. In two of his interviews with police, Cody was asked whether anyone used physical discipline on the Victim. Cody said that he lightly smacked the victim "on the butt" and that Appellant did not use physical discipline. Also, Cody told police that he sometimes became frustrated with the Victim and needed a break. Appellant claims trial counsel should have examined Cody on these statements because "he was alone with the victim just hours before she was rushed away to the hospital where the injuries were noticed." Appellant's Brief at 15. As we explained just above, the record reflects that Appellant was alone with the Victim at the onset of symptoms, and the symptoms would have ensued immediately after the injury. Given these facts, we cannot conclude that the outcome of trial would have been different if the jury knew that Cody sometimes became frustrated with the Victim and spanked her on the butt.

Appellant's third argument is that trial counsel was ineffective for failing to examine Cody about his statement that he did not believe Appellant would intentionally hurt the Victim. Appellant's Brief at 16. We believe this issue is of arguable merit, and trial counsel acknowledged at the PCRA hearing that he should have introduced Cody's statement at trial. Nonetheless, trial counsel succeeded in convincing the jury that Appellant did not act with the specific intent to kill the Victim. The jury acquitted her of first-degree murder.

We therefore discern no prejudice to Appellant resulting from counsel's omission.

Appellant's fourth argument is that that trial counsel was ineffective for failing to question Cody about the paternal grandfather's use of physical discipline on the Victim. Appellant's Brief at 17-18. During one of his interviews with Police, Cody said that his father would sometimes ask the Victim if he wanted Papa to "kick her big ass." N.T. PCRA Hearing, 4/18/22, at 14. Paternal grandfather was watching the Victim on the evening of November 14, 2013 when she needed to be taken to the hospital. *Id.* Thus, Appellant believes that evidence of the paternal grandfather's corporal punishment would have raised an inference that paternal grandfather, not Appellant, might have been responsible for the Victim's injury. This is another version of the alternate perpetrator defense. As we have already explained, the evidence did not support that defense.

Appellant's fifth argument is that trial counsel was ineffective for failing to impeach Cody regarding his statement that Appellant displayed little emotion when the Victim passed away. Appellant's Brief at 18-19. Appellant claims Cody had no knowledge of her reaction because Appellant was not at the hospital when the Victim died. The pertinent exchange at trial went as follows:

Q. Were you at the hospital when [the Victim passed away?]

A. In Pittsburgh?

Q. Yes.

A. Yeah.

Q. How about [Appellant]? Was she there?

A. At the beginning, yeah.

Q. Did she have any reaction or emotion when [the Victim] passed?

A. Very little.

N.T. Trial, 8/21/17, at 48-49.

Appellant fails to explain how counsel's failure to object to this exchange resulted in prejudice. If Appellant was not at the hospital when the Victim died—and Cody testified that she was there only "at the beginning"—then she would have been informed of the Victim's death somewhere else at some other point in time. Appellant's argument rests on an unproven assumption that Cody had no knowledge of Appellant's initial reaction to the news of the Victim's death. Indeed, had defense counsel examined Cody on this point, he might have simply clarified that the Victim displayed no emotion upon being informed of the Victim's death, wherever and whenever that occurred. Because Appellant has offered no evidence to show that Cody had no knowledge of Appellant's initial reaction, this argument lacks merit. Further, defense counsel remembered a state trooper saying that Appellant had little reaction to the Victim's death. N.T. PCRA Hearing, 4/18/22, at 17. Had defense counsel pursued this line of inquiry with Cody, he risked opening the

door for the Commonwealth to belabor a point that was not favorable to Appellant.

Appellant's sixth argument is that trial counsel was ineffective for failing to file a motion to suppress one of her pretrial statements to police. Appellant's Brief at 20-22. In her final interview with the police, Appellant said the Victim bumped her head on a coffee table on the morning of November 15, 2013. She had not mentioned that fact in her earlier police interviews. Appellant claims that, prior to giving the statement in question, she signed a waiver of rights and consent form only because police promised her she would get to go home and see her family after her interview. She claimed that this false promise from police provided grounds for a motion to suppress. At the PCRA hearing, trial counsel testified that Appellant never informed him of this alleged promise prior to trial. N.T. PCRA Hearing, 4/18/22, at 22-23, 31. The PCRA court found counsel credible. Appellant has failed to establish the factual predicate for this argument.

Appellant's seventh argument is that trial counsel was ineffective for failing to object to the authenticity of a series of Facebook messages between Appellant and her friend, Krisandra Evans. Appellant's Brief at 22-24. In the messages, Appellant revealed to Evans that she was frustrated with taking care of the Victim, and that she might end up hurting the Victim. N.T. Trial, 8/21/17, at 98.

Electronic messages are subject to the same authenticity requirements as any other document. ***Commonwealth v. Orr***, 255 A.3d 589, 596 (Pa. Super. 2021), ***appeal denied***, 266 A.3d 2 (Pa. 2021).[4] "[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." ***Commonwealth v. Koch***, 39 A.3d 996, 1005 (Pa. Super. 2011), ***aff'd by an equally divided Court***, 106 A.3d 705 (Pa. 2014). In ***Koch***, this Court held that the Commonwealth failed to authenticate text messages where there was no testimony to establish that the defendant wrote all the drug-related text messages retrieved from her cell phone. ***Id.*** There were "no contextual clues in the drug-related text messages themselves tending to reveal the identity of the sender." ***Id.*** Indeed, the Commonwealth conceded that the defendant was not the only person known to send text messages from her phone. ***Id.***

In ***Orr***, on the other hand, this Court held that the Commonwealth produced sufficient circumstantial clues to identify the defendant as the author of the disputed text messages. ***Orr***, 255 A.3d at 601. In particular, the content of the messages indicated that the defendant wrote them. The

---

[4]   Pa.R.E. 901(a) provides that the proponent of evidence must produce sufficient evidence to support a finding that the item is what it appears to be. Pa.R.E. 901(a).

messages, from the defendant to the victim, commonly referenced their ongoing custody dispute. *Id.* In context, they made clear that they were sent from a "disgruntled lover who shared a daughter with the [recipient.]" *Id.*

In *Commonwealth v. Mangel*, 181 A.3d 1154 (Pa. Super. 2018), this Court considered the admissibility of Facebook chat logs. "Social media evidence presents additional challenges because of the great ease with which a social media account may be falsified, or a legitimate account may be accessed by an imposter." *Id.* at 1162. "Nevertheless, social media records and communications can be properly authenticated within the existing framework of Pa.R.E. 901 and Pennsylvania case law, similar to the manner in which text messages and instant messages can be authenticated." *Id.* Thus, there must be an adequate showing of relevance and authenticity, along with direct or circumstantial evidence to identify the author. *Id.*

In *Mangel*, a police officer testified that a search for the Facebook page of the defendant's name revealed a Facebook page with his name, identifying his town of residence as Meadville, PA, and depicting pictures of him. *Id.* at 1156-57. The Commonwealth failed, however, to offer any direct or circumstantial evidence that the defendant was the author of the messages in question. The fact that the account reflected the defendant's name, hometown, and high school was not sufficient for that purpose, and there were no contextual clues in the messages themselves that served that purpose. *Id.* at 1164. Thus, the trial court did not err in excluding them. *Id.*

Instantly, Evans testified that she and Appellant communicated on Facebook and in person. N.T. Trial, 8/21/23, at 96. She said she never received a Facebook message from Appellant's account that came from someone other than Appellant. *Id.* at 96-97. Evans identified a Commonwealth exhibit as a copy of an exchange of Facebook messages between herself and Appellant. *Id.* at 97. Evans read the following portion of Appellant's message to her into the record:

> Ha, ha, ha, at least he got it. Yeah, after she sat on time-out and she sat there for like fifteen minutes, and I asked her if she wanted me to paint her nails, then I fed it to her. I'm stuck with her now while Cody sleeps. I'm pissed. I said, 'is she going up there?' And he said, 'How often does she go up there anymore?' I said, 'Never.' And he just fell back to sleep. It's not supposed to rain tomorrow. I checked on every news thing. Ha, ha. I'll check again. Seriously, Pee Wee, **I'm sick and tired of watching her. I'm gonna end up hurting her or me, more than likely me. I'm not kidding. I'm tired of yelling at her for putting her finger in her mouth and teasing Jackson. The next time Jackson bites her, I'm just letting him. I don't care.** Someday next week maybe Soph is going to have to go with Brandi because my mom's gonna make me a hair appointment. It's just would you take me to Tracy's to get it done?

*Id.* at 98. This post was dated October 11, 2013. *Id.* at 100.

Evans testified that Jackson was the dog. *Id.* at 99. "Pee Wee" is Evans' nickname. *Id.* Evans said that "her" in the bolded portion of the quote above referred to the Victim. *Id.* Thus, Appellant stated in the Facebook message that she would either hurt the Victim or herself. *Id.* at 100.

In summary then, the recipient of Appellant's message took the stand and testified that she and Appellant communicated regularly on Facebook and

that she had never received a message from Appellant's account that was authored by anyone other than Appellant. Further, Appellant's message referenced the Victim by name, referenced the dog by name, and referred to Evans by her nickname, "Pee Wee." Appellant's message also referenced Cody, with whom she lived at the time. These contextual clues are similar to those present in ***Orr*** but missing in ***Koch*** and ***Mangel***. The record therefore contains more than sufficient direct and circumstantial evidence that the Facebook message to Evans came from Appellant's account and that Appellant authored it. An objection based on authenticity would have failed, and counsel's failure to lodge that objection was not prejudicial to Appellant.

Next, in her eighth argument, Appellant claims trial counsel was ineffective for failing to secure the testimony of Dr. Kenneth Clark, the coroner who conducted the Victim's autopsy and initially listed the cause of death as undetermined. Appellant's Brief at 24-26. To prevail on a claim that trial counsel was ineffective in failing to call a witness, a PCRA petitioner must establish:

> 1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Medina***, 209 A.3d 992, 998 (Pa. Super. 2019). Appellant did not call Dr. Clark at the PCRA hearing. Thus, there is no evidence that he was willing to testify for the defense or of what his testimony would have

been, and therefore nothing in the record to support a conclusion that the absence of Dr. Clark's testimony was prejudicial to Appellant. This argument fails.

Appellant's ninth argument is that trial counsel failed to present evidence of the Victim's condition on the evening of November 14, 2013. Appellant's Brief at 26. As noted above, the reports from the Victim's hospitalization that evening indicate that she had bruising on her head. Appellant claims this evidence was critical to establishing that the Victim's fatal injuries were not sustained on the following morning when the Victim was in Appellant's sole care. This argument is another offshoot of Appellant's alternate perpetrator theory. We have already explained that that theory lacks merit because all of the evidence indicates that the Victim died from an injury she sustained on the morning of November 15, 2013. Evidence that the Victim had bruising on her forehead the previous evening would not have altered the outcome of trial.

Appellant's tenth argument is that trial counsel was ineffective for failing to address her presumption of innocence with the jury. Appellant's Brief at 27. Appellant's argument on this point is conclusionary and undeveloped. In any event, the record reflects that the trial court instructed the jury that Appellant was innocent until proven guilty. N.T. Trial, 8/23/17, at 139. Because the trial court explained the presumption of innocence to the jury,

we discern no possible prejudice to Appellant resulting from trial counsel's failure to do so.

Appellant's eleventh argument is that counsel was ineffective for failing to preserve her sentencing challenges on direct appeal. Appellant's Brief at 27-29. On direct appeal, this Court concluded that Appellant's challenges to the discretionary aspects of her sentence either were not included in her post-sentence motion, and therefore waived, or did not raise substantial questions. The panel also noted, in *dicta*, that the issues were meritless even if properly preserved. **Commonwealth v. Medzie**, 694 WDA 2018 (Pa. Super. Oct. 9, 2019), unpublished memorandum, at 5-6. The *dicta* from the prior panel would not have precluded this panel from considering the merits of Appellant's sentencing arguments, but Appellant's brief does not address the merits of the waived sentencing issues. Thus, she does not explain how counsel's error prejudiced her. The failure to preserve an issue for direct appeal does not result in presumed prejudice. **Commonwealth v. Reaves**, 923 A.2d 1119, 1128 (Pa. 2007).

Appellant's twelfth and final assertion of error is that trial counsel was ineffective for failing to impeach Krisandra Evans. Appellant's Brief at 29-30. Appellant asserts that, on September 11, 2017, Evans was charged with felony and misdemeanor drug crimes. Appellant asserts these charges were pending at the time of her August 2017 trial, but not disclosed by the Commonwealth and not discovered by defense counsel. Appellant cites **Brady v. Maryland**,

373 U.S. 83 (1963), but she does not develop any argument as to the Commonwealth's duty to disclose to Appellant that Evans was under investigation as of Appellant's trial. Trial counsel noted that the yet unfiled charges against Evans would not have appeared on the criminal background that he received for trial witnesses. N.T. PCRA Hearing, 4/18/22, at 25. Appellant does not argue that defense counsel was aware or should have been aware of the pending charges by any other means. Appellant baldly asserts that impeachment of Evans with Evans' pending criminal investigation would have changed the outcome of trial, but she does not explain why this is so, given all the evidence against her. For these reasons, Appellant cannot obtain relief on her final argument.

Because we have reviewed each of Appellant's arguments and found them lacking in merit, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/13/2023